UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **CHIZAMONIQUE W.**[1], <br><br> Plaintiff, <br><br> vs. <br><br> **COMMISSIONER OF SOCIAL SECURITY,** <br><br> Defendant. | **2:25-CV-10252-TGB-DRG** <br><br> HON. TERRENCE G. BERG <br><br> **ORDER OVERRULING PLAINTIFF'S OBJECTIONS (ECF NO. 21),** <br><br> **ADOPTING REPORT AND RECOMMENDATION (ECF NO. 17),** <br><br> **GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 14), AND** <br><br> **DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 12)** |

Plaintiff Chizamonique W. brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act").

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

The parties filed Cross-Motions for Summary Judgment on May 30, 2025, and June 6, 2025, and Plaintiff filed a Reply brief on June 20, 2025. ECF Nos. 12, 14, 15. On December 1, 2025, Magistrate Judge David R. Grand issued a Report and Recommendation, ECF No. 17, recommending that Plaintiff's Motion for Summary Judgment, ECF No. 12, be denied and Defendant's Motion for Summary Judgment, ECF No. 14, be granted, thereby affirming the Commissioner's decision. Plaintiff filed objections to Magistrate Judge Grand's Report on January 5, 2026, to which Defendant responded. ECF Nos. 21, 22.

For the following reasons, Magistrate Judge Grand's Report and Recommendation will be **ACCEPTED**, Plaintiff's objections will be **OVERRULED**, and the Commissioner's decision will be **AFFIRMED**.

## I.  BACKGROUND

Plaintiff alleges her disability began on July 12, 2022. ECF No. 7-1, PageID.137. She was 42 years old at the time of her alleged onset date. *Id.* PageID.90. She had completed high school and two years of college, obtaining an associate's degree, and was a mortgage lender and a nail tech prior to the alleged onset of disability. *Id.* PageID.306, 632.

Plaintiff's applications for DIB and SSI were denied at the initial level on November 16, 2022, *id.* PageID.170–77, and on reconsideration on February 22, 2023. *Id.* PageID.178–83. Plaintiff requested an administrative hearing, which was held on March 8, 2024 before Administrative Law Judge ("ALJ") Carol Guyton. *Id.* PageID.64–89.

2

Plaintiff, who was represented by counsel, testified at the hearing, as did vocational expert ("VE") Eric Dennison. *Id.*

On May 21, 2024, the ALJ released a written opinion concluding that Plaintiff was not disabled under the Act because she could still work at jobs that existed in significant numbers in the national economy despite certain work-related limitations. *Id.* PageID.137–59. Following the traditional five-step framework set forth under 20 C.F.R. § 404.1520(a)(4), the ALJ found that Plaintiff has the following severe impairments: "iron deficiency anemia; closed avulsion fracture of the left greater trochanter femur; degenerative disc disease of the lumbar spine; osteoarthritis of the right knee; vertigo; migraines; post-traumatic stress disorder (PTSD); major depressive disorder; and generalized anxiety disorder." *Id.* PageID.140. At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. *Id.* PageID.141–48.

In assessing Plaintiff's Residual Functional Capacity ("RFC"), the ALJ found:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally climb ramps and stairs; the claimant can occasionally balance; the claimant cannot crawl or kneel; the claimant can occasionally stoop and crouch; the claimant cannot climb ladders, ropes, or scaffolds; the claimant requires the ability to stand near the work station every hour for 2 to 3 minutes, and in doing so she will not be off task more than 10% of each 8 hour workday;

the claimant cannot have exposure to hazardous machinery, unprotected heights, or uneven walking planes; the claimant is able to understand, remember, and carry out simple routine tasks involving no more than simple short instructions and she can use judgment to make simple work related decisions with occasional work place changes; the claimant cannot perform production rate pace work, but she can do jobs with end of day goals; the claimant cannot have interaction with the general public; and lastly, the claimant can have only occasional interaction with coworkers and supervisors.

*Id.* PageID.148. Based on the VE's testimony at the hearing, the ALJ concluded that Plaintiff could still work as an ink printer (with "modern tools and processes:"), patcher, and dial marker, and that these jobs exist in significant numbers in the national economy, and thus she was not disabled. *Id.* PageID.158–59.

After the Appeals Council declined further review, *id.* PageID.50–55, Plaintiff appealed to this Court, ECF No. 1, and the parties filed cross-motions for summary judgment. ECF Nos. 12, 14. In her motion, Plaintiff argued that the Commissioner erred in determining whether her headache disorder medically equals Listing 11.02, and failed to adequately account for the symptoms of her migraine headaches and mental limitations in determining her RFC. ECF No. 12. The Commissioner argued in its motion that the ALJ's decision was supported by substantial evidence and that Plaintiff's motion should be denied. ECF No. 14.

Judge Grand subsequently issued a Report and Recommendation ("R&R") affirming the ALJ's decision. ECF No. 17. Plaintiff has now filed

4

four Objections to Judge Grand's R&R, ECF No. 21, to which the Commissioner has responded. ECF No. 22. These issues are now before the Court.

## II.   LEGAL STANDARD

This Court must review *de novo* the parts of a Magistrate Judge's Report and Recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1)(C). But the Court "need only review the Magistrate Judge's factual or legal conclusions that are specifically objected to by either party." *Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 452 (N.D. Ohio 2012) (*quoting Thomas v. Arn*, 474 U.S. 140, 150 (1985)). Failure to object waives further review of a district court's adoption of the report and recommendation. *Pfahler v. Nat'l Latex Prods. Co.*, 517 F.3d 816, 829 (6th Cir. 2007). General objections to a Magistrate Judge's determination "without explaining the source of the error" have "the same effect[ ] as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) (explaining that general objections "waste judicial resources rather than sav[e] them," because they "effectively duplicate[ ]" the "functions of the district court … as both the magistrate and the district court perform identical tasks"). Similarly, "objections that merely restate arguments previously raised and considered [by the Magistrate Judge] do not require the Court to consider them." *Young v. Jindal*, No. 21-12170, 2023 WL 8190689, at *1 (E.D. Mich. Nov. 27, 2023) (Drain, J.); *see also Vasconez v. Langston*

5

*Companies, Inc.*, No. 2:20-cv-02160, 2021 WL 3124959, at *1 (W.D. Tenn. July 23, 2021) ("[W]here a party's objections are simply a repetition of the arguments he or she made to the magistrate judge, a *de novo* review is not warranted."). And, "[p]arties may not 'raise at the district court stage new arguments or issues that were not presented' before the magistrate judge's final R&R." *Lewis v. Sole Law, PLLC*, 629 F. Supp. 3d 731, 734 (E.D. Mich. 2022) (Ludington, J.) (citing *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)), *aff'd*, No. 22-1918, 2023 WL 11018147 (6th Cir. Nov. 17, 2023).

The district court will make a "*de novo* determination of those portions of the report ... to which objection is made." 28 U.S.C. § 636(b)(1)(C). "De novo" means that the court will consider the issues as if for the first time, without giving any particular deference to the prior opinion. "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* Where neither party objects to the report, the district court is not obligated to independently review the record. *See Thomas*, 474 U.S. at 149–52.

### III.   DISCUSSION

**A. Plaintiff's First Objection**

In Plaintiff's first objection, she argues that the Magistrate Judge "misapplied" Social Security Ruling ("SSR") 17-2p and excused the ALJ

from performing the medical equivalence analysis of Plaintiff's migraine headaches in violation of SSR 19-4p. ECF No. 21, PageID.1002. Plaintiff contends that the Magistrate Judge stated that SSR 17-2p requires specific documentation for medical equivalence findings and that none existed here, and then concluded "[w]ithout this required support, the ALJ properly could not find medical equivalence." *Id.* PageID.1003 (citing ECF No. 17, PageID.975). Plaintiff asserts that the Magistrate Judge erred in making that finding because that interpretation of SSR 17-2p creates an "impossible procedural barrier" that would lead to ALJs never having to perform the medical equivalence analysis since there would never be a finding from the state agency of medical equivalence that would reach an ALJ. *Id.* (stating that if consultants find medical equivalence, the claimant is approved for benefits at the initial level). Plaintiff asserts that SSR 17-2p only addresses what documentation is required to support a final determination of medical equivalence. *Id.* PageID.1004.

The Commissioner responds that the Magistrate Judge properly found that the ALJ appropriately determined that Plaintiff's headaches did not medically equal Listing 11.02, and the ALJ's analysis is supported by substantial evidence. ECF No. 22, PageID.1035. The Commissioner asserts that the Magistrate Judge applied SSR 17-2p and found that none of the state agency consultants who evaluated Plaintiff's impairments found that she had an impairment that met or medically equaled any

7

listing, and that the ALJ's finding that Plaintiff's headaches did not equal the frequency of episodes required by SSR 19-4p is supported by substantial evidence. *Id.* PageID.1035–37.

At step three of the disability evaluation process, the Commissioner must consider whether a claimant's impairments meet or medically equal any of the relevant listing requirements of 20 C.F.R. Part 404, Subpart P, App. 1, 20 C.F.R. §§ 404.1520(a)(4)(iii). The claimant bears the burden of demonstrating that she meets or equals a listed impairment. *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014). "For a claimant to qualify for benefits by showing that h[er] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (italics in original). At step three, an ALJ follows the analytical process set forth in SSR 17-2p for evaluating equivalence. SSR 17-2p, 2017 WL 3928306 (Mar. 27, 2017).

The parties agree that there is no specific listing for primary headache disorders and that the Social Security Administration has issued specific guidance for evaluating headache disorders in disability claims. *See* SSR 19-4p, 2019 WL 4169635 (Aug. 26, 2019). Under that guidance, an ALJ evaluates a headache disorder at step three by determining whether, "alone or in combination with another impairment(s), [it] medically equals a listing." *Id.* at *7. The ruling notes

8

that Listing 11.02 for epilepsy is the most closely analogous listed impairment for headache disorders, explaining that, "[w]hile uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures)." *Id.* The ruling also sets forth the proper analysis under paragraphs B and D of Listing 11.02, as reproduced below:

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

> Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also consider whether

9

the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

*Id.* (citing 20 C.F.R. Part 404, Subpt. P, App. § 11.02 (Mar. 14, 2018)).

Here, in determining that Plaintiff's headaches did not equate to Listing 11.02, the ALJ explained:

Additionally, the undersigned has evaluated the claimant's headache disorder under SSR 19-4p and in doing so has considered the objective medical evidence comprised of the claimant's full medical and headache history, physical examinations, neurological examinations, laboratory tests, and imaging scans within the medical evidence of record. Moreover, the undersigned notes that a primary headache disorder cannot meet a listing under 20 CFR Part 404, Subpart P, Appendix 1, but may equal listing 11.02 for dyscognitive seizures. However, a review of the record does not reveal the existence of dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C) or dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the "paragraph B" criteria discussed below. In addition, no medical source has established that the claimant's primary headache disorder equals the severity of the listings.

ECF No. 7-1, PageID.144–45.

Plaintiff argues that the Magistrate Judge's conclusion that the ALJ properly determined Plaintiff's impairment does not equal Listing

10

11.02 because "no medical source established medical equivalence" in the record is in error because such an interpretation of SSR 17-2p would eliminate medical equivalence as a pathway to disability. ECF No. 21, PageID.1003. Plaintiff contends that SSR 17-2p provides only that an ALJ *may* ask for and consider evidence from medical experts in making the Step 3 determination, but medical evidence is not mandatory. *Id.* PageID.1004.

Plaintiff's argument is unpersuasive. While the language in SSR 19-4p outlines the mechanism through which a "medically equals" finding may be reached for a primary headache disorder, "[t]here is nothing in SSR 19-4p's language that exempts such medical equivalence findings from the requirements of SSR 17-2p, which applies to all medical equivalence determinations." *Barkhauer v. Comm'r of Soc. Sec.*, No. 5:24-CV-00560, 2025 WL 1115618, at *23 (N.D. Ohio Apr. 15, 2025) (citing SSR 17-2p); *see also Willis v. Comm'r of Soc. Sec.*, No. 5:24-CV-01503, 2025 WL 2055270, at *14 (N.D. Ohio July 23, 2025) (same), *adopted by* 2025 WL 2402706 (N.D. Ohio Aug. 19, 2025). Under SSR 17-2p, before an ALJ can find a claimant medically equals a listing, the record "must" contain one of the following:

1. A prior administrative medical finding from [a state agency medical consultant] or [psychological consultant] from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or

2. [Medical expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or

3. A report from the [Appeals Council]'s medical support staff supporting the medical equivalence finding.

SSR 17-2p, 2017 WL 3928306 at*3. Thus, an ALJ may only find medical equivalence at the hearing level if the record contains supportive medical opinion findings from either a state agency consultant or a medical expert. *Id.* And if the ALJ "believes the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment," SSR 17-2p provides that the ALJ need not obtain medical expert evidence, and in fact need not even "articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment." *Id.*

Here, none of the state agency consultants made findings supporting medical equivalence, and thus the Magistrate Judge correctly concluded that it was important that the ALJ had found that no medical source had concluded that Plaintiff's impairments medically equaled a Listing. ECF No. 17, PageID.976. Without such evidence, the ALJ could not have made a finding that Plaintiff's headaches were medically equivalent to Listing 11.02. *See* SSR 17-2p, 2017 WL 39828306, at *3; *Bessette v. Comm'r of Soc. Sec.*, No. 3:25-CV-00039, 2026 WL 369905, at *5 (E.D. Ky. Feb. 10, 2026) (ALJ properly found that the plaintiff's

12

migraines did not medically equal a listing because "none of the state agency consultants made findings supporting medical equivalence"); *Barkhauer*, 2025 WL 1115618, at *23 (finding plaintiff's argument that the ALJ erred when he said he was constrained from making a medical equivalence finding due to the lack of a medical expert without merit). While Plaintiff maintains that the state agency consultants' reports were based on incomplete data because they did not assess whether her headaches medically equaled Listing 11.02, ECF No. 21, PageID.1007, those state agency physicians were aware that Plaintiff was alleging that her migraines were a disabling impairment, and they both found the impairment was "severe." ECF No. 7-1, PageID.90–92, 112–15. One doctor noted that Plaintiff was receiving no treatment for headaches. *id.* PageID.91, and the other doctor noted that the record evidence does not indicate a worsening of symptoms. *Id.* PageID.114. Accordingly, that the state agency physicians did not further evaluate Plaintiffs' headache, which they found to be a severe impairment, at Step Three demonstrates that they did not consider that impairment as meeting or equaling a listing.

Plaintiff also invokes the Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-2-5-34(A)(1), to argue that an ALJ is required to independently evaluate whether the evidence shows that a claimant's impairment could medically equal a listing and, if considering finding medical equivalence, to obtain a medical expert opinion in this context.

13

ECF No. 21, PageID.1005. This manual, at HALLEX I-2-5-34, provides guidance on when ALJs should obtain a medical expert opinion, and provides that an ALJ "*may* need to obtain a medical expert opinion ... when: the ALJ is determining whether a claimant's impairment(s) meets a listed impairment(s)," but *must* obtain a medical expert opinion when "considering finding that the claimant's impairment(s) medically equals a listing." *See* HALLEX I-2-5-34, 1994 WL 637370 (S.S.A. last updated Jan. 21, 2020) (emphasis added).

First, although HALLEX describes policies that ALJs should follow when conducting hearings and reviewing a claimant's case, HALLEX's procedural guidance is not binding on this court. *See Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008). Nevertheless, even if HALLEX were binding, Plaintiff's interpretation of HALLEX I-2-5-34(A)(1)—that the ALJ must obtain medical expert testimony every time he considers whether a claimant's impairments equal a listing—is not a correct reading of this guidance according to recent decisions by the courts. As explained in, *Ruby v. Colvin*, No. 2:12-CV-01254, 2015 WL 1000672, at *4–5 (S.D. Ohio Mar. 5, 2015), "HALLEX I–2–5–34 cannot require an ALJ to obtain a medical expert every time he considers whether a claimant's impairments meet a disability listing" because "[i]f this were the requirement, the ALJ would essentially have no discretion at all in calling a medical expert." *See also Cline v. Comm'r of Soc. Sec.*, No. 1:23-cv-1087, 2023 WL 9267609, at *6 n.8 (N.D. Ohio Dec. 12, 2023)

14

("[I]f this scenario were interpreted otherwise, the ALJ would be required to obtain a medical expert in every case involving at least one severe impairment."), *adopted by* 2024 WL 860627 (N.D. Ohio Feb. 29, 2024); *Weinmeister v. O'Malley*, No. 4:23-cv-3151, 2024 WL 4218502, at *3 (S.D. Tex. Aug. 6, 2024) (construing the guidance as plaintiff maintains would "essentially require every ALJ to obtain a medical expert opinion in each case that they consider a Listing ...."), *adopted by* 2024 WL 4219743 (S.D. Tex. Sept. 11, 2024). Such a view "would render HALLEX I-2-5-34 and its explanations of when obtaining such a report is discretionary and nondiscretionary meaningless." *Weinmeister*, 2024 WL 4218502, at *3. To avoid that untenable outcome, courts hold that HALLEX I-2-5-34(A)(1) does not apply when an ALJ finds no evidence that a claimant's impairments meet or medically equal a listing. *See id.*; *see also Ruby*, 2015 WL 1000672, at *5. This is consistent with SSR 17-2p which states "[i]f an adjudicator … believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, we do not require the adjudicator to obtain [medical expert] evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment." SSR 17-2p, 2017 WL 3928306, at *4. Accordingly, HALLEX I-2-5-34(A)(1) provides no basis for reversing the ALJ's conclusion that Plaintiff's impairments failed to medically equal Listing 11.02.

Finally, Plaintiff claims that the record contains prima facie evidence of medical equivalence. ECF No. 21, PageID.1008. However, as the Commissioner correctly states, this is an attack on the ALJ's decision rather than a challenge to the Magistrate Judge's R&R, and is in fact an expansion of Plaintiff's argument in her motion for summary judgment. ECF No. 22, PageID.1038–39. This does not constitute a proper objection and thus it can be rejected on that basis. *See Colbert v. Saul*, No. 18-CV-13211, 2019 WL 6001613, at \*2 (E.D. Mich. Nov. 14, 2019) (Borman, J.) ("When the objecting party presents the same arguments to the magistrate and then to the district court, without identifying a specific error committed by the magistrate when he or she rejected those arguments, the objecting party forces 'the magistrate and the district court [to] perform identical tasks' which is duplicative, wasteful, and 'runs contrary to the purposes of the Magistrates Act.'"); *Anger v. Gringell*, 12-CV-14980, 2014 WL 988989, \*3 (E.D. Mich. Mar. 13, 2014) (Goldsmith, J.) ("In objections to an R & R, a party cannot raise new arguments or expand previously made arguments.") (citing *Murr*, 200 F.3d at 902 n.1).

In any event, the ALJ did state that, considering "the objective medical evidence comprised of the claimant's full medical and headache history, physical examinations, neurological examinations, laboratory tests, and imaging scans within the medical evidence of record," Plaintiff's headaches did not equal the frequency of episodes required by

the listing despite adherence to prescribed treatment, as set forth in SSR 19-4p. ECF No. 7-1, PageID.144–45. And as Plaintiff acknowledges in her Objection, there must be record evidence of a "detailed description from an [acceptable medical source] of a typical headache event." ECF No. 21, PageID.1008 (citing SSR 19-4p, 2019 WL 4169635, at *7).

Plaintiff cites to records indicating she complained, pre-disability, of "a very mild dull headache" for which she reported "closing her eyes and laying down." *Id.* (citing ECF No. 7-1, PageID.429). She also refers to an August 2022 "Headache Questionnaire" where she reported daily headaches with "blurred vision, pounding in ears, [and] nausea" lasting "2-3 days, sometimes a week." *Id.* PageID.1012 (citing ECF No. 7-1, PageID.321–22). She stated she takes Motrin and Tylenol for treatment, and "eat[s] as much protein as [she] can and light therapy for [her] anxiety and depression." *Id.* Plaintiff also refers to a September 2022 treatment note where she reported daily headaches which could be throbbing, and that she "does not take any pain medication [for the headache]" and instead "tries to relax." *Id.* PageID.1008, 1012–13 (citing ECF No. 7-1, PageID.492). That note states that the doctor prescribed "a trial of inderal LA 60 mg daily for prophylactic therapy," but there is no record whether Plaintiff adhered this prescribed treatment or the effectiveness of or side effects if any from the treatment. *Id.* (citing ECF No. 7-1, PageID.497). She next refers to an August 2023 mental health treatment note where she reported that she was having migraines four

17

to five times a month with pain lasting for four to five days, and that she managed the headaches by "[t]rying my best to go to sleep." *Id.* PageID.1013 (citing ECF No. 7-1, PageID.736–37). And in September 2023, Plaintiff complained of throbbing headaches with light intolerance. *Id.* PageID.1008–09, 1013 (citing ECF No. 7-1, PageID.891).

The ALJ carefully reviewed and discussed all of Plaintiff's medical records, including the records cited by Plaintiff, in reaching his decision that these records do not show that Plaintiff's headaches equaled the frequency of Listing 11.02—headaches occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. ECF No. 7-1, PageID.144–45, 149–57. Plaintiff neglects to mention that the statements in the sporadic records she relies on are generally based on the subjective reports she made to the medical providers, not objective findings by those medical providers. *See Brown v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-01441, 2023 WL 5530530 (N.D. Ohio Aug. 28, 2023) (noting the records plaintiff offered generally only included her subjective reports to providers but contained no objective records of her headache events in finding plaintiff failed to meet Listing 11.02). The ALJ found that Plaintiff's subjective complaints were not entirely consistent with the record, and Plaintiff has not challenged that finding. *See Tracia B. v. Comm'r of Soc. Sec.*, No. 1:24-cv-681, 2025 WL 1119126, at *6 (W.D. Mich. Apr. 16, 2025) (holding the ALJ properly determined that the record failed to support medical equivalence under Listing 11.02(B) because

"[a]ll of the evidence Plaintiff cites reflects only her subjective descriptions of her headaches, rather than observations from a medical provider who has observed a typical headache event").

To the extent that Plaintiff attempts to suggest and support an alternative reading of the record, this argument fails. Even if substantial evidence supports an alternative finding, this is not enough to disturb the ALJ's finding. As long as substantial evidence supports the Commissioner's decision, the Court must defer to it, "'even if there is substantial evidence in the record that would have supported an opposite conclusion[.]'" *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted).

And, even if Plaintiff did have sufficient evidence to meet the frequency requirement of Listing 11.02 despite adherence to prescribed treatment, that fact alone does not establish equivalency on its own. *Smith v. Comm'r of Soc. Sec.*, No. 2:21-cv-10093, 2022 WL 1052427, at *4 (E.D. Mich. Mar. 4, 2022) (Grey, M.J.) ("Although 'frequency of headache events' is a factor, it is one of several."), *adopted by* 2022 WL 965022 (E.D. Mich. Mar. 30, 2022) (Murphy, J.); *see also Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("It is insufficient that a

19

claimant comes close to meeting the requirements of a listed impairment.").

To qualify under 11.02 Listing, as Plaintiff acknowledges, "a detailed description from an [acceptable medical source] of a typical headache event" must exist for review. SSR 19-4p, 2019 WL 4169635, at *7. Without an acceptable medical source recording a "description of a typical migraine event, the side effects of her medications, and most importantly, an opinion concerning the limitations in functioning associated with her migraines," Plaintiff's argument fails. *See Snyder v. Comm'r of Soc. Sec.*, No. 22-5948, 2023 WL 3673265, at *4 (6th Cir. May 26, 2023); *see also Bear v. Bisignano*, No. 2:25-CV-00001, at *9 (M.D. Tenn. June 12, 2025) ("Self-reported symptoms do not constitute a description of a typical headache event for the purposes of SSR 19-4p").

Plaintiff does not identify any records showing a "detailed description from an [acceptable medical source] of a typical headache event" or medical records establishing that her headaches met frequency requirements "despite adherence to prescribed treatment," as required by SSR 19-4p. *See* SSR 19-4p, 2019 WL 4169635, at *7; *see also Reynolds v. Kijakazi*, No. 1:2CV199, 2022 WL 1241646, at *12 (M.D.N.C. Apr. 27, 2022) (finding that the plaintiff failed to meet the requirements of SSR 19-4p, in part, because the record lacked a detailed description of a typical headache event by a provider who observed the event, and holding that the plaintiff's own subjective allegations alone could not establish

20

that the plaintiff equaled the requirements of Listing 11.02(B)); *Bear*, 2025 WL 1669349, at \*9 (plaintiff failed to meet a listing equivalence because she did not have a detailed description from an acceptable medical source of a typical headache event.); *Willis*, 2025 WL 2055270 at \*14 (while plaintiff cited to records indicating she complained of headaches to her providers and testified to very frequent headaches, she does not identify records showing a detailed description of a typical headache event, and thus did not equal Listing 11.02 under SSR 19-4p). Substantial evidence therefore supports the ALJ's determination that this is not one of the "uncommon" cases where a person with a headache disorder exhibits equivalent signs and limitations to those detailed in Listing 11.02.

For all these reasons, Plaintiff's first objection will be **OVERRULED.**

### B. Plaintiff's Second Objection

In her second objection, Plaintiff argues that the Magistrate Judge erroneously required proof of marked limitations for Listing 11.02B when he stated in the R&R that "to medically equal listing 11.02, Plaintiff had to show that she had at least one 'marked' restriction in the paragraph B criteria." ECF No. 21, PageID.1009 (citing ECF No. 17, PageID.977).[2]

---

[2] "Paragraph B" criteria are used to rate the severity of a mental impairment at steps two and three of the sequential evaluation process in the following four functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentration,

Plaintiff asserts that analysis of the paragraph B criteria only applies to Listing 11.02(D), not 11.02(B), and thus the Magistrate Judge applied an incorrect legal standard. ECF No. 21, PageID.1011.

The Court finds any error by the Magistrate Judge in discussing the paragraph B criteria in conjunction with Listing 11.02(B) is harmless. The Court notes that the ALJ properly noted that only 11.02(D) required a marked limitation in the paragraph B criteria. ECF No. 7-1, PageID.145. And, as stated above, Plaintiff has failed to present necessary evidence showing a "detailed description from an [acceptable medical source] of a typical headache event" or medical records establishing that her headaches met frequency requirements "despite adherence to prescribed treatment" to medically equal Listing 11.02(B) *or* (D). Therefore, this alleged error does not warrant remand, and Plaintiff's second objection will be **OVERRULED**.

## C. Plaintiff's Third Objection

Plaintiff next states that the state agency psychological consultant Dr. James Tripp opined that "the [Plaintiff] is able to do simple 1-2 step tasks with sustainability and persistence," ECF No. 7-1, PageID.97, 107, which opinion the ALJ found "persuasive." *Id.* PageID.156. Upon

persistence, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520(c)(3), 416.920(c)(3). These four areas are evaluated on a five-point scale: "None, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520(c)(4), 416.920(c)(4). The ALJ here concluded that Plaintiff had moderate limitations in the four functional areas. ECF No. 7-1, PageID.145–47.

reconsideration a year later, Dr. Anthony Gensterblum agreed with Dr. Tripp, finding Plaintiff "remains capable of simple, routine tasks on a sustained basis in a low stress setting." *Id.* PageID.156. The ALJ similarly found this opinion "persuasive." *Id.* The ALJ's RFC then stated, in relevant part, that "the state agency medical consultants opined that the claimant is able to perform 1 to 2 step tasks with sustainability (i.e., simple routine tasks on a sustained basis in a low stress setting)," and concluded that Plaintiff is "able to understand, remember, and carry out simple routine tasks involving no more than simple short instructions, and she can use judgment to make simple work related decisions with occasional work place changes." *Id.* PageID.148.

Plaintiff contends that she argued in her motion for summary judgment that the ALJ erred in not including the "1-2 step" limitation in the RFC, or explaining why she did not include it, and that if the ALJ had accounted for the 1-2 step task limitation, Plaintiff would not have been qualified for any of the three jobs identified by the VE. She asserts that the Magistrate Judge relied heavily on *Monateri v. Commissioner of Social Security*, 436 F. App'x 434 (6th Cir. 2011) in holding that "ALJs are not required to align [Dictionary of Occupational Titles ("DOT")] reasoning levels with RFC classifications" and concluding that any difference between a 1-2 step task limitation and a limitation to simple, routine tasks was at most harmless error because "the 1-2 step task

limitation would not require the ALJ to limit Plaintiff to jobs at reasoning level 1." ECF No. 21, PageID.1017 (citing ECF No. 17, PageID.987).

In her Objection to the Magistrate Judge's R&R, Plaintiff first argues that the Magistrate Judge erred in concluding that "even if the Court were to accept Plaintiff's argument that a 1-2 step task limitation is materially different from a limitation to 'simple routine tasks,' the 1-2 step task limitation would not require the ALJ to limit Plaintiff to jobs at reasoning level 1." ECF No. 17, PageID.987. Plaintiff contends that the ALJ improperly relied on the holding in *Monateri* to resolve the question of whether the ALJ reasonably incorporated the state agency psychologists' findings into the RFC determination. ECF No. 21, PageID.1017–18.

The Commissioner responds that the Magistrate Judge did not rely on *Monateri* for the reason stated by Plaintiff, but instead properly relied on that decision in response to Plaintiff's argument in her motion for summary judgment that the jobs identified by the VE at step five of the ALJ's decision would not be applicable because those jobs required a reasoning level of 2 under the *Dictionary of Occupational Titles* and the 1-2 step tasks are restricted to a reasoning level of 1. ECF No. 22, PageID.1041–42 (citing ECF No. 17, PageID.987). The Magistrate Judge stated, in response to that argument, that "there is no precedent that requires the Commissioner to align DOT reasoning levels with RFC classifications," ECF No. 17, PageID.987 (citing *Monateri*, 436 F. App'x

24

at 446), and concluded therefore that "even if the Court were to accept Plaintiff's argument that a 1-2 step task limitation is materially different from a limitation to 'simple routine tasks,' the 1-2 step task limitation would not require the ALJ to limit Plaintiff to jobs at reasoning level 1." *Id.* PageID.987–88. The Court finds the Magistrate Judge's reliance on *Monateri* to be well founded.

Plaintiff next argues in her Objection that multiple circuits recognize that 1-2 step tasks are materially different than simple, routine tasks. ECF No. 21, PageID.1018–20. However, this is a new argument not made to the Magistrate Judge. In her motion for summary judgment, Plaintiff asserted that there was no controlling authority that there is a distinction between 1-2 step tasks and simple, routine tasks. ECF No. 12, PageID.935 (collecting cases). This objection therefore is improper and shall be **OVERRULED**. *See Lewis*, 629 F. Supp. 3d at 734 ("Parties may not 'raise at the district court stage new arguments or issues that were not presented' before the magistrate judge's final R&R.") (citing *Murr*, 200 F.3d at 902 n.1).

Plaintiff also argues that the Magistrate Judge improperly supplied post-hoc rationalization of the ALJ's evaluation of the state agency psychologists' findings. The Court disagrees and finds that the ALJ properly considered the two state agency psychologists' findings that Plaintiff could do "simple [sic] 1-2 step tasks with sustainability and persistence … [with] occasional contact with coworkers, supervisors, and

the public" and that Plaintiff "remains capable of simple, routine tasks on a sustained basis in a low stress setting." ECF No. 7-1, PageID.156 (citing *id.* PageID.97, 107, 120). The ALJ found both of these opinions persuasive. *Id.* PageID.156. The Magistrate Judge stated that the ALJ equated these two restrictions when she stated in her decision that "the claimant is able to perform 1 to 2 step tasks with sustainability and persistence (i.e., simple routine tasks on a sustained basis in a low stress setting)," and then determined that Plaintiff was able to "understand, remember, and carry out simple routine tasks involving no more than simple short instructions" and "us[ing] judgment to make simple work related decisions with occasional work place changes." *Id.* PageID.148. The Magistrate Judge's decision therefore shows how the two state agency psychologists' findings were properly evaluated by the ALJ and included in the RFC. The Magistrate Judge properly found that the ALJ did not depart from the consultants' opinions.

Accordingly, Plaintiff's third objection will be **OVERRULED.**

### D. Plaintiff's Fourth Objection

Finally, Plaintiff argues that the Magistrate Judge failed to recognize an alleged internal inconsistency in the ALJ's decision; namely, that the ALJ found that Plaintiff's migraines were a severe impairment but failed to include any limitation in the RFC directly related to migraine headaches, such as phonophobia and photophobia. ECF No. 21, PageID.1023. Plaintiff asserts that if an ALJ finds a condition severe at

26

step two, the RFC must either account for limitations arising from that condition or explain why no such limitations are warranted. *Id.* PageID.1026.

The Commissioner responds that this objection is essentially a repackaged argument Plaintiff made in her motion for summary judgment to the Magistrate Judge, and thus it is an improper objection. ECF No. 22, PageID.1043 (citing ECF No. 12, PageID.932–35). The Court agrees, and this objection can be **OVERRULED** on that basis.

Moreover, this argument—that a decision is "internally inconsistent" and thus subject to challenge if an impairment is found "severe" at step 2 but does not draw specific limiting provisions later in the ALJ's RFC assessment—has been expressly rejected by the Sixth Circuit." *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 427–28 (6th Cir. 2007) (rejecting claimant's argument "that the ALJ's analysis was internally inconsistent because he classified [the claimant's] [depression] as 'severe' but ... determined that [the claimant's] depression had only a minimal effect on his ability to concentrate"). The Sixth Circuit in *Griffith* endorsed the district court's decision in *Yang v. Comm'r of Soc. Sec.*, No. 00-10446, 2004 WL 1765480, at *4–5 (E.D. Mich. 2004) (Lawson, J.)). In *Yang,* the plaintiff argued—just as Plaintiff argues in this case— that "if a limitation is found to be severe at step two of the sequential analysis," then it must be specifically accounted for by limiting the jobs that the plaintiff could perform. *Id.* at *4. The *Yang* court rejected the

27

plaintiff's argument, finding that it "conflat[ed] the step-two analysis with the RFC determination" and "distort[ed] the meaning of both." *Id.* This is because the showing required for a finding that an impairment is "severe" at step 2 is "de minimis." *Id.* (citing *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir.1988)). "[T]he application of the requirement to establish 'severity' is quite 'lenient,'" the *Yang* court explained, and generally is "'employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id.* The RFC assessment, "on the other hand," is "an 'assessment of [the claimant's] capacity for work,' once his limitations have been considered." *Id.* at *5 (citing 20 C.F.R. § 416.945(a)). The RFC assessment is "meant 'to describe the claimant's residual abilities or what the claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities.'" *Id.* (quoting *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 240 (6th Cir.2002)). Therefore, the court concluded in *Yang,* a "claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Id.*

Thus, the presence of a severe impairment alone does not automatically warrant an RFC limitation if it does not impact a claimant's ability to work. *See Griffith*, 217 F. App'x at 428–29; *Corley v. Comm'r of Soc. Sec.,* No. 98-3785, 1999 WL 970306, at *1 (6th Cir. Oct. 14, 1999) ("The ALJ did not err in finding that a severe impairment can

28

exist without also finding that a significant limitation and disability exist.... The severe impairment threshold is separate from (and lower than) the disability threshold."). For this reason, SSA "regulations recognize that individuals who have the same severe impairment may have different RFCs depending on their other impairments, pain, and other symptoms." *Griffeth*, 217 F. App'x at 429 (citing 20 C.F.R. § 404.1545(e)). "'Put another way, the existence of a severe impairment says nothing as to its limiting effects.'" *Hicks v. Berryhill*, No. 3:17-CV-176-HBG, 2018 WL 2074181, at *4 (E.D. Tenn. May 3, 2018) (quoting *Simpson v. Comm'r of Soc. Sec.*, No. 1:13-CV-640, 2014 WL 3845951, at *9 (S.D. Ohio Aug. 5, 2014)). Importantly, Plaintiff "bears the burden to show that an impairment invokes work-related limitations." *Hicks*, 2018 WL 2074181, at *4 (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

The Magistrate Judge found that the ALJ considered Plaintiff's migraines in establishing the RFC, limiting her to a subsection of sedentary work with additional environmental and postural limitations "to account for … migraines." ECF No. 17, PageID.981 (citing ECF No. 7-1, PageID.154). The Magistrate Judge acknowledged that there is no requirement that the ALJ discuss every piece of evidence in the administrative record. *Id.* PageID.981 (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006)). He then found that it was not erroneous for the ALJ not to discuss phonophobia or photophobia

limitations in the RFC because there was no evidence in the record to support finding those impairments merited any particular limitations in the RFC, other than Plaintiff's few subjective complaints as to those conditions. *Id.* The ALJ found Plaintiff's subjective complaints were not entirely supported by the record (which finding Plaintiff does not challenge), and the Magistrate Judge noted other record evidence stating that Plaintiff does *not* have photophobia and that while she does have phonophobia, it "can cause anxiety and panic attacks," but mentioned no other limitations. *Id.* PageID.982–93 (citing ECF No. 7-1, PageID.497, 588, 764). The Magistrate Judge noted that Plaintiff points to no medical records indicating any limitation imposed by a doctor on account of photophobia, and that the ALJ reasonably accounted for Plaintiff's anxiety (due to phonophobia) in the RFC. *Id.* (citing ECF No. 7-1, PageID.147, 155). Tellingly, Plaintiff does not identify any additional limitation that a doctor ordered that the ALJ did not include. *Id.*

SSR 19-4p states that in formulating the RFC, "[c]onsistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC." SSR 19-4p, 2019 WL 4169635, at *8. The Magistrate Judge properly found that substantial evidence supports the ALJ's RFC determination. *Id.* While Plaintiff argues that she has presented evidence that the ALJ's RFC should have included additional limitations, "[i]f substantial evidence supports the Commissioner's decision, this Court will defer to that finding 'even if

there is substantial evidence in the record that would have supported an opposite conclusion." *Griffeth*, 217 F. App'x at 427 (quoting *Longworth v. Comm'r Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)). And, the VE's testimony in support of the ALJ's RFC constitutes substantial evidence to support the ALJ's determination that Plaintiff was able to perform work. *See id.* at 429.

Plaintiff's fourth objection therefore will be **OVERRULED**.

## IV.   CONCLUSION

For all the reasons stated above, it is hereby **ORDERED** that Plaintiff's Objections (ECF No. 21) are **OVERRULED**, that Magistrate Judge Grand's December 1, 2025 Report and Recommendation (ECF No. 17) is **ACCEPTED** and **ADOPTED**, that Defendant's Motion for Summary Judgment (ECF No. 14) is **GRANTED**, that Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**, and that the findings and conclusions of the Commissioner are **AFFIRMED**.

It is **FURTHER ORDERED** that the case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: March 30, 2026          /s/Terrence G. Berg
                               HON. TERRENCE G. BERG
                               UNITED STATES DISTRICT JUDGE

31